LDA

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IDEO, INC.,<br>Plaintiff,<br>v.<br>GTECH CORPORATION,<br>Defendant. | Case No.<br>CA 07 404 ML |

## COMPLAINT

IDEO, Inc. ("IDEO") on personal knowledge as to itself and otherwise on information and belief, for its Complaint against GTECH Corporation ("GTECH" or "Defendant") hereby avers as follows:

## NATURE OF CLAIM

1. This is an action for collection of over $145,000 in unpaid amounts owed, as well as injunctive and other relief arising form GTECH's willful disregard of it obligations to IDEO under a written contract (the "Services Agreement"). GTECH's breach of the Services Agreement and misconduct has resulted in the unlawful exploitation of IDEO's intellectual property and associated rights, and also has caused IDEO hundreds of thousands of dollars in quantifiable and potential losses.

## JURISDICTION AND VENUE

2. IDEO is a corporation organized under the laws of the State of Michigan, with a principal place of business in Palo Alto, California.

3. GTECH is a corporation organized under the laws of the State of Delaware, with a principal place of business located at 55 Technology Way, West Greenwich, Rhode Island.

4. This Court has original jurisdiction in his matter pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

5. Under Section 11.2 of the Services Agreement the parties agreed to submit "any proceeding relating thereto . . . to the exclusive jurisdiction of the state and federal courts of Rhode Island."

**FACTS**

**THE SERVICES AGREEMENT**

6. In January of 2006, IDEO and GTECH entered into a Services Agreement and accompanying Statement of Work ("SOW"), under which IDEO would provide certain design consulting services to GTECH in connection with producing a retail, clerk-operated Instant Ticket Vending Machine, known as its "Game Guard" product. The Services Agreement and Statement of Work are appended hereto as Exhibit 1.

7. Pursuant to the Services Agreement, GTECH was agreed to pay for the services it delivered, and to reimburse IDEO's project-related expenses.

8. Specifically, under the Services Agreement, GTECH acknowledged and/or agreed to the following:

- "that the innovation process is often and unexpectedly unpredictable, and as a result the desired outcome cannot be guaranteed.";
- "IDEO will perform the services in accordance with the prevailing standard for professional consulting firms" and "Services shall be deemed accepted by [GTECH] if [GTECH] does not inform IDEO of any alleged deficiencies in the Services" within the thirty (30) day notice period set forth in the contract; and
- "concurrently with or promptly following the execution of the Services Agreement, the Parties will agree upon and execute a SOW setting forth the Deliverables," as defined in the contract.

9. As noted above, the Services Agreement incorporated by reference an SOW. In general, the SOW set the forth the phased scope and timing of the project, described in detail the Deliverables, set forth the division of responsibilities as between IDEO and GTECH, and also set forth the amounts that would be payable from GTECH to IDEO under the Services Agreement.

10. A purchase order for $2.1 million was issued by GTECH to IDEO to cover all phases of the services to be delivered, subject to the following payment schedule as set forth in the SOW: (1) Phase 1 payments of $186,667 for mid-phase review, and an additional $186,667 for an end of phase review; (2) Phase 2 payments of $186,667 for electronics interaction and ID review, $186,667 for a works like model review, and $186,667 as an end of phase payment; (3) Phase 3 payments of $186,667 for design review for fabrication of five units, $186,667 for five working units ready for testing, and $186,667 as an end of phase payment; (4) Phase 4 payment of $186,666 for, among other things, delivery and acceptance of production documentation package and completion of the first five manufacturing pilot units.

11. Per the SOW, the services were broken into different phases, with nine (9) fixed payments at varying points. Indeed, IDEO stated in the SOW as follows: "We plan to follow a phased development process with specific deliverables and decision points, and will work closely and collaboratively with GTECH throughout the project."

12. Phase 3 concluded on or about December 2006. IDEO invoiced and GTECH has paid amounts through phase 3.

13. During the course of the parties' work together a written modification to the foregoing payment schedule was agreed-to, reducing the Phase 4 payment from $186,666 to $146,000, in return for a reduction in the Phase 4 Deliverables as to which IDEO would be responsible (See Exhibit 2). Phase 4 and the project as a whole was completed, and IDEO

subsequently invoiced GTECH this amount on or about June 1, 2007. Despite this agreement, GTECH has failed and refused to pay IDEO $146,000, which amount remains due and owing. Per Section 4.2 of the Agreement payment was due "net sixty (60) days."

14. In addition, under the Services Agreement, GTECH's rights of ownership in the Deliverables provided by IDEO, as well as GTECH's right of license to IDEO intellectual property, trade secrets, know how, and other information incorporated into the Deliverables, were contingent on and strictly conditioned by Section 6.5 of the contract:

> "The above assignments and licenses [as set forth in Section 6 of the Services Agreement] are effective only when: (i) client notifies IDEO in writing of its acceptance of Deliverables for the Services or corresponding phase; and (ii) IDEO is paid all amounts to which IDEO is entitled for the Services or the corresponding phase." (Services Agreement, § 6.5, emphasis added)

15. GTECH has not complied with Section 6.5 of the Services Agreement and therefore is not entitled to use, market, sell or otherwise exploit the Deliverables.

**GTECH'S ADDITIONAL BREACHES AND BAD FAITH CONDUCT**

16. In a transparent effort to avoid paying IDEO all amounts due under the Services Agreement, on or about July 27, 2007 GTECH faxed a letter to IDEO in Massachusetts making two faulty claims (a) that under Section 2.2 of the Services Agreement GTECH had determined that certain undefined documentation did not conform to "mutually agreed upon expectations." Leaving aside that this notice was served well after the thirty (30) day deadline set forth in the Services Agreement, the allegation is false; and (b) that IDEO did not notify GTECH that the COGS had exceeded a target of $3000.

17. Under the SOW and otherwise, IDEO was clear with GTECH, repeatedly, that close collaboration and communication was important because it increased the likelihood that the project would have a successful outcome.

18. Specifically, the SOW stated as follows: "In an effort to establish clear and uniform expectations for this proposed product development program, IDEO must explicitly state our understanding of and our ground rules for this engagement so that our two groups can work together harmoniously toward a successful outcome for both parties. In all programs there are four fundamental business elements of which only ONE can be set immovable and thus provide the anchor for the program. These elements are: 1) product costs, 2) product feature set, 3) program costs and 4) schedule."

19. GTECH identified product cost as the anchor. The express terms of the Services Agreement and SOW make clear, however, that the project plan was dependent on information provided to IDEO by GTECH, and in that context was designed to maximize the "chances" of attaining GTECH's aspirational product cost target of $3,000.

20. The SOW went on to state specifically as follows: "IDEO acknowledges that a COG [cost of goods] in excess of $3,000 has greatly diminished value to GTECH. The project plan has been designed to maximize our chances of reducing the cost of goods for the ...product in a timely fashion. A secondary priority is project schedule." At various times during the project GTECH, through its conduct, emphasized project schedule, rather than project cost, as the most important factor.

21. Indeed, Page 5 of the SOW stated: "Although the project has been configured to maximize the chances of reducing the COGS, *we cannot guarantee a particular COGS* outcome as this involves many factors that are outside IDEO control. If at any point it is determined the COGS target cannot be met, IDEO will promptly notify GTECH ...." (emphasis added). At all times material hereto, IDEO complied with the foregoing notice provision.

22. On October 5, 2007 a more detailed letter making the same allegations was sent by GTECH's outside law firm to IDEO's offices in Massachusetts. That letter makes the spurious allegation that IDEO had not timely informed GTECH that the COGS was exceeding the $3000 objective, and had GTECH known by some time in November they may have terminated the project then.

23. GTECH also demanded the return of $746,656 already paid to IDEO under the Services Agreement.

24. GTECH knew and was informed that the COGS was exceeding $3000 by at least as early as August 2007.

25. GTECH knows and understands that it assumed full responsibility for the assembly costs, including without limitation the sheet metal assembly and its pricing, and that it is not entitled to the return of even one dollar previously paid to IDEO under the Services Agreement.

26. GTECH's efforts through the July 27 and October 5, 2007 letters, among other conduct to be adduced at trial, makes clear that GTECH is willing to (a) concoct any excuse to avoid paying the $146,000 balance due under the Services Agreement; (b) ignore the plain language of Section 2.2 of the Agreement (that GTECH needed to "report [any] alleged deficiency to IDEO within thirty (30) days after the earlier of . . . conclusion of the phase"); and (c) blatantly violate Section 6.5 of the Services Agreement by proceeding with manufacturing the product, and attempting to exploit IDEO's intellectual property without having paid IDEO therefor.

27. IDEO has learned that GTECH has initiated manufacturing and is planning an initial market launch of 400 units. GTECH is not entitled, under Section 6.5 of the Services

Agreement, to move forward with such plans, and should be immediately restrained from unlawfully exploiting IDEO's intellectual property

**COUNT I**
***(Breach of Contract)***

28. IDEO incorporates by reference the allegations set forth in Paragraphs 1 – 27 hereof as if fully set forth herein.

29. As set forth in detail above, GTECH has violated the Services Agreement as amended by, among other ways, failing to pay and willfully ignoring its obligation to pay $146,000 due and owing; and, blatantly violating Section 6.5 of the Services Agreement.

30. IDEO has performed all required services under the Services Agreement and is not in breach thereof;

31. As a direct and proximate result of GTECH's breaches of contract, IDEO has been damaged in an amount to be determined at trial.

**COUNT II**
***(Violation of Massachusetts General Laws Ch. 93A)***

32. IDEO incorporates by reference the allegations set forth in Paragraphs 1 – 31 hereof as if fully set forth herein.

33. As described above, GTECH has conducted itself in an unfair and/or deceptive manner in connection with its dealings with IDEO, including without limitation the following: (a) refusing to pay a sum certain due and owing; (b) accusing IDEO of failing to disclose COG information that never was in its possession and is in the exclusive control of GTECH; (c) attempting to exploit and exploiting IDEO's intellectual property in knowing disregard of Section 6.5 of the Services Agreement.

34. The relevant conduct and its effects occurred primarily and substantially in the Commonwealth of Massachusetts.

35. As a direct and proximate result of GTECH's unfair and/or deceptive conduct, IDEO is entitled to treble damages (to approximately $440,000) and reimbursement of its reasonable attorney's fees and costs.

**COUNT III**
***(Breach of Implied Covenant)***

36. IDEO incorporates by reference the allegations set forth in Paragraphs 1 – 35 hereof as if fully set forth herein.

37. All contracts have an implied covenant of good faith and fair dealing, requiring contracting parties to deal with each other in a fair manner.

38. GTECH's willful disregard of its contractual obligations to IDEO, has deprived IDEO of the benefit of the bargain.

39. At all times material hereto, IDEO has treated GTECH in a fair manner.

40. As a direct and proximate result of GTECH's breaches of the implied covenant, IDEO has been damaged in an amount to be determined at trial.

**COUNT IV**
***(Unjust Enrichment)***

41. IDEO incorporates by reference the allegations set forth in Paragraphs 1 – 40 hereof as if fully set forth herein.

42. Pursuant to the Services Agreement and Statement of Work, IDEO developed and redesigned GTECH's Game Guard product.

43. Pursuant to Section 6 of the Services Agreement, IDEO agreed to assign or license certain intellectual property to GTECH; however, such assignment or license would only

be effective after GTECH accepted the Deliverables and paid IDEO all amounts to which IDEO was entitled.

44. GTECH has failed to pay IDEO all amounts to which it is entitled.

45. As a direct result of GTECH's actions, GTECH has been unjustly enriched in the amount of (a) the reasonable value of IDEO's services remaining unpaid; and (b) the reasonable value of IDEO's intellectual property.

**COUNT V**
***(Declaratory Judgment)***

46. IDEO incorporates by reference the allegations set forth in Paragraphs 1 – 45 hereof as if fully set forth herein.

47. As set forth above, an actual controversy exists between GTECH and IDEO relating to (a) GTECH's obligation to pay all amounts due under the Services Agreement; and (b) whether or not GTECH or IDEO has certain rights to use and ownership in the design and development work performed under the Services Agreement, and the resulting intellectual property.

48. IDEO requests a judicial declaration that until all amounts due under the Services Agreement are paid in full, IDEO owns all of the intellectual property developed under the Services Agreement and related SOW.

**COUNT VI**
***(Injunctive Relief)***

49. IDEO incorporates by reference the allegations set forth in Paragraphs 1 – 48 hereof as if fully set forth herein.

50. IDEO seeks a preliminary injunction and permanent injunction restraining GTECH and all persons acting on behalf of or in concert with GTECH, from selling, distributing

or otherwise exploiting the newly designed Game Guard product developed under the Services Agreement; and further, IDEO seeks a preliminary injunction and permanent injunction restraining GTECH and all persons acting on behalf of or in concert with GTECH from using, selling, assigning, licensing, or otherwise alienating in any manner the intellectual property developed under the Services Agreement.

## PRAYER FOR RELIEF

WHEREFORE, IDEO prays for entry of judgment as follows:

A. That judgment enter in IDEO's favor and against GTECH as to Count I of the Complaint;

B. That judgment enter in IDEO's favor and against GTECH as to Count II of the Complaint, including award of treble damages and attorney's fees pursuant to M.G.L. Ch. 93A;

C. That judgment enter in IDEO's favor and against GTECH as to Count III of the Complaint.

D. That judgment enter in IDEO's favor and against GTECH as to Count IV of the Complaint.

E. That a declaration be entered in IDEO's favor and against GTECH as set forth in Count V of the Complaint;

F. That this Court issue a preliminary injunction and permanent injunction that restrains GTECH, and all persons acting on behalf of or in concert with GTECH, from selling, distributing or otherwise exploiting the newly designed Game Guard product developed under the Services Agreement; and further, restrains GTECH and all persons acting on behalf of or in concert with GTECH from using, selling, assigning, licensing or otherwise alienating or encumbering in any manner the intellectual property developed under the Services Agreement.

G. That this Court award IDEO its reasonable attorney's fees and costs; and

H. That this Court grant such other and further relief as is just and proper.

**DEMAND FOR JURY TRIAL**

PLAINTIFF, IDEO, HEREBY DEMANDS A TRIAL BY JURY OF ANY ISSUE HEREIN TRIABLE OF RIGHT BY A JURY.

IDEO, INC.

Respectfully submitted,

Mitchell R. Edwards (Bar No. 6942)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
Tel: (401) 457-5122
Fax: (401) 457-5123
medwards@haslaw.com

OF COUNSEL:

Robert B. Lovett (BBO #561691)
COOLEY GODWARD KRONISH LLP
The Prudential Tower
800 Boylston Street
46th Floor
Boston, MA 02199
Tel: (617) 937-2300
Fax: (617) 937-2400
rlovett@cooley.com

Attorneys for Plaintiff

October 29, 2007