UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

IDEO, INC.
Plaintiff
Defendant in Counterclaim

V. C.A. No. 07-404 ML

GTECH CORPORATION
Defendant
Plaintiff in Counterclaim

## ANSWER AND COUNTERCLAIM OF DEFENDANT GTECH CORPORATION

### Answer To Complaint

Now comes the Defendant, GTECH Corporation ("GTECH"), and responds to the Plaintiff's Complaint as follows.

1. The allegations contained in this paragraph are such that GTECH denies the allegations and leaves Plaintiff, IDEO, Inc. ("IDEO") to its proof.

2. Defendant GTECH Corporation ("GTECH") is without sufficient information to deny or admit this allegation. Accordingly, the allegation is denied.

3. GTECH admits it is a corporation organized under the laws of the State of Delaware. GTECH's principal place of business is 10 Memorial Boulevard, Providence, Rhode Island.

4. The allegations contained in this paragraph are such that GTECH denies the allegations and leaves IDEO to its proof.

5. Admitted.

6. Admitted.

7. GTECH admits that its relationship with IDEO was dictated by the terms of the Services Agreement. GTECH denies this allegation to the extent it may be construed as varying from the Services Agreement.

8. GTECH admits that its relationship with IDEO was dictated by the terms of the Services Agreement. GTECH admits the allegations in this paragraph to the extent such terms are quoted from the Services Agreement.

9. GTECH admits the Services Agreement incorporated by reference a Statement of Work ("SOW"). GTECH admits this allegation to the extent it is consistent with the terms of the SOW.

10. GTECH admits this allegation to the extent it is consistent with the terms of the SOW.

11. GTECH admits this allegation to the extent it is consistent with the terms of the SOW.

12. To the extent deliverables produced by IDEO under Phase 3 were of poor and substandard quality, GTECH denies that Phase 3 was concluded. GTECH admits it made the payments to IDEO associated with Phase 3.

13. GTECH admits that the parties agreed upon modifications to Phase 4. GTECH denies that "Phase 4 and the project as a whole were completed" in conformance with the Services Agreement and SOW. GTECH denies that it received an invoice from IDEO on or about June 1, 2007. Rather, the final invoice from IDEO was not received by GTECH until the beginning of July 2007. GTECH admits it has not paid IDEO the final $146,000 payment. GTECH denies this amount is "due and owing" per the terms of the Services Agreement and/or SOW.

14. Denied.

15. Denied.

16. The allegations contained in this paragraph are such that GTECH denies the allegations and leaves IDEO to its proof.

17. GTECH admits this allegation to the extent it is consistent with the terms of the SOW. GTECH admits that collaboration and communication were important for the project's success.

18. GTECH admits this allegation to the extent it is consistent with the terms of the SOW.

19. GTECH admits this allegation to the extent it is consistent with the terms of the Services Agreement and SOW. GTECH denies any characterizations in this paragraph that may be construed as inconsistent with the Services Agreement and SOW.

20. GTECH admits this allegation to the extent it is consistent with the terms of the Services Agreement and SOW. GTECH denies that project schedule was ever the most important factor for the project.

21. GTECH admits this allegation to the extent it is consistent with the terms of the SOW. GTECH denies that IDEO complied with the provision cited in this allegation.

22. GTECH admits its attorneys mailed correspondence to IDEO on or about October 5, 2007. GTECH denies the allegation that the correspondence contained "spurious allegations."

23. Admitted.

24. GTECH admits that in or about August of 2006, IDEO had informed it that the COGS would exceed $3,000. GTECH denies any suggestion in this allegation that IDEO fully disclosed the correct amount of the COGS.

25. The allegations contained in this paragraph are such that GTECH denies the allegations and leaves IDEO to its proof.

26. The allegations contained in this paragraph are such that GTECH denies the allegations and leaves IDEO to its proof.

27. GTECH admits that it has initiated manufacturing of the Game Guard device. GTECH denies all other allegations contained in this paragraph.

**COUNT I**
**(Breach of Contract)**

28. GTECH incorporates its responses to the allegations contained in Paragraphs 1-27 herein.

29. Denied.

30. Denied.

31. Denied.

**COUNT II**
**(Violation of Massachusetts General Laws Ch. 93A)**

32. GTECH incorporates its responses to the allegations contained in Paragraphs 1-31 herein.

33. Denied.

34. Denied.

35. Denied.

**COUNT III**
**(Breach of Implied Covenant)**

36. GTECH incorporates its responses to the allegations contained in Paragraphs 1-35 herein.

37. Admitted.

38. Denied.

39. Denied.

40. Denied.

**COUNT IV**
**(Unjust Enrichment)**

41. GTECH incorporates its responses to the allegations contained in Paragraphs 1-40 herein.

42. Admitted to the extent this allegation does not suggest IDEO fully satisfied its obligations under the Services Agreement and SOW. Otherwise denied.

43. Denied.

44. Denied.

45. Denied.

**COUNT V**
**(Declaratory Judgment)**

46. GTECH incorporates its responses to the allegations contained in Paragraphs 1-45 herein.

47. The allegations contained in this paragraph are such that GTECH denies the allegations and leaves IDEO to its proof.

48. The allegations contained in this paragraph are such that GTECH denies the allegations and leaves IDEO to its proof.

**COUNT VI**
**(Injunctive Relief)**

49. GTECH incorporates its responses to the allegations contained in Paragraphs 1-48 herein.

50. The allegations contained in this paragraph are such that GTECH denies the allegations and leaves IDEO to its proof.

## Affirmative Defenses

### FIRST AFFIRMATIVE DEFENSE

The complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

IDEO's claims fail for lack of consideration.

### THIRD AFFIRMATIVE DEFENSE

IDEO has breached the contract(s) under which it claims relief.

### FOURTH AFFIRMATIVE DEFENSE

GTECH asserts the defense of "unclean hands" to IDEO's claims in equity.

### FIFTH AFFIRMATIVE DEFENSE

IDEO is not entitled to injunctive relief because it has adequate remedies at law, as to which liability is expressly denied.

### SIXTH AFFIRMATIVE DEFENSE

The Services Agreement dictates that Rhode Island law governs the relationship between the parties. Accordingly, IDEO has waived any claims based on Massachusetts law, as well as any other state or jurisdiction.

### SEVENTH AFFIRMATIVE DEFENSE

GTECH hereby give notice that it intends to rely upon any other defense that may become available or appear during or as a result of discovery proceedings in this action, and hereby reserve their right to amend their answer to assert each such defense or defenses.

## Counterclaim

1. The SOW repeatedly emphasizes that GTECH considered product cost (costs of goods and services or "COGS") to be the most important factor in the design of the Game Guard.

2. The SOW requires that, "If at any point it is determined the COGS target [of $3,000 per unit] cannot be met, IDEO will promptly notify GTECH such that a decision can be made going forward. GTECH may, at its option, terminate the Services Agreement and work being performed under this STATEMENT OF WORK per the terms of the IDEO Services Agreement if it is determined at any time that the COGS target cannot be met."

3. In or about August 2006, IDEO released an updated COGS estimate to GTECH, which projected the Game Guard cost at $3271.16 per unit. Although GTECH had the option of terminating the Services Agreement based on this projected COGS figure, it decided to continue with the Game Guard project.

4. It was known from the commencement of the project that the Game Guard design involved sheet metal fabrication and assembly. During late October of 2006, GTECH determined that required sheet metal work for the Game Guard project should be performed by a third-party vendor rather than GTECH's own manufacturing facilities.

5. IDEO was made fully aware of GTECH's decision to outsource the sheet metal fabrication and assembly aspect of the manufacturing process.

6. IDEO reasonably should have been expected to factor the outsourcing of the sheet metal fabrication and assembly into its cost estimates.

7. In November of 2006, in accordance with the Services Agreement, IDEO released a "complete" design, and an updated estimate of the per unit COGS. At this time, following GTECH's decision to outsource the sheet metal fabrication and assembly, and IDEO's knowledge of the same, IDEO once again represented to GTECH that the unit COGS for the Game Guard would be $3271.16, or approximately 9% over the $3,000 target.

8. In or about January 2007, IDEO provided GTECH with the final technical design documentation required under the Services Agreement and SOW.

9. The final design documentation provided by IDEO to GTECH was incomplete and of poor quality. As a result, GTECH incurred significant delays, and increases in the cost of production.

10. From approximately January through May of 2007, during the course of reviewing and correcting the documentation provided by IDEO, GTECH determined, through its own diligence, that due to the outsourcing of the sheet metal fabrication, the actual per unit COGS for the Game Guard was approximately $3,700.

11. Although IDEO did inform GTECH in or about August of 2006 of an 9% cost overrun, IDEO either knew, or should have known, that the actual target deviation was more than 23%; approximately 2.5 times greater than the figure provided by IDEO.

12. IDEO's failure to promptly and accurately notify GTECH of the significant increase in the per unit COGS of the Game Guard deprived GTECH of the opportunity to reassess whether it wanted to continue or terminate the project and its relationship with IDEO.

**COUNT I**
**(Breach of Contract – Substandard Performance by IDEO)**

13. GTECH hereby incorporates the allegations contained in paragraphs 1 through 12 of this Counterclaim.

14. The Services Agreement required IDEO to perform the required services "in accordance with the prevailing standard for professional consultancy firms providing similar services in effect at the time of such performance."

15. IDEO's performance of the Services Agreement did not meet the standard delineated in Paragraph 14, and accordingly is a breach of the Services Agreement.

16. GTECH has been harmed by IDEO's breach of the Services Agreement.

**COUNT II**
**(Breach of Contract – Failure To Notify GTECH Of Material Increase in COGS)**

17. GTECH hereby incorporates the allegations contained in paragraphs 1 through 16 of this Counterclaim.

18. Under the Services Agreement and SOW, IDEO had a contractual duty to timely notify GTECH of any increase to the projected per unit COGS above $3,000.

19. IDEO knew or should have known that the outsourcing of the sheet metal fabrication would significantly increase the per unit COGS of the Game Guard, yet failed to notify GTECH in this regard.

20. The failure of IDEO to notify GTECH of the increased per unit COGS of the Game Guard was a breach of the Services Agreement and SOW.

21. GTECH has been harmed by IDEO's breach of the Services Agreement and SOW.

**COUNT III**
**(Breach of Contract – Duty of Good Faith and Fair Dealing)**

22. GTECH hereby incorporates the allegations contained in paragraphs 1 through 21 of this Counterclaim.

23. The Services Agreement (and SOW) is a contract, which carries an implicit duty requiring IDEO to perform its contractual obligations in good faith and with fair dealing towards GTECH.

24. IDEO breached its duty of good faith and fair dealing in its performance of the Services Agreement and SOW.

25. GTECH has been harmed by IDEO's breach of the Services Agreement and SOW.

**COUNT IV**
**(Fraud)**

26. GTECH hereby incorporates the allegations contained in paragraphs 1 through 25 of this Counterclaim.

27. IDEO knew that the outsourcing of the sheet metal fabrication would significantly increase the per unit COGS of the Game Guard, yet intentionally failed to notify GTECH in this regard in order to secure further payments under the Services Agreement and SOW.

28. GTECH has been harmed by IDEO's fraudulent actions.

**COUNT V**
**(Unjust Enrichment)**

29. GTECH hereby incorporates the allegations contained in paragraphs 1 through 28 of this Counterclaim.

30. IDEO knew that the outsourcing of the sheet metal fabrication would significantly increase the per unit COGS of the Game Guard, yet failed to notify GTECH in this regard.

31. As a result of this failure to notify GTECH, GTECH made payments to IDEO under the Services Agreement that it may not have otherwise paid.

32. As a result of IDEO's failure to notify GTECH of the increased cost of the Game Guard, IDEO has been unjustly enriched.

**COUNT VI**
**(Declaratory Judgment)**

33. GTECH hereby incorporates the allegations contained in paragraphs 1 through 32 of this Counterclaim.

34. GTECH has substantially performed all of its obligations under the Services Agreement and SOW.

35. Legal and Equitable principles dictate that GTECH has an effective assignment of each Deliverable set forth in the Services Agreement, and a valid right to license any intellectual property contained in such Deliverables.

**Prayer For Relief**

**WHEREFORE,** Plaintiff in Counterclaim, GTECH, requests judgment against Defendant in Counterclaim, IDEO, and prays that this Court order the following relief:

A. Judgment against IDEO for damages resulting from its breach of the Services Agreement and SOW.

B. Declaratory judgment recognizing GTECH's right of ownership of each Deliverable set forth in the Services Agreement and a valid right to license any intellectual property contained in such Deliverable.

C. Judgment against IDEO for punitive damages if it is determined that IDEO engaged in fraud.

D. Judgment against IDEO for GTECH's Attorney fees and costs.

E. Such other and further relief as this Court deems just and fair.

Plaintiff,
GTECH CORPORATION
By its attorneys,

/s/ Andrew Berg
ANDREW BERG Bar No. 4754
Sammartino & Berg LLP
128 Dorrance Street
Suite 400
Providence, Rhode Island 02903
(401) 274-0113
(401) 274-0175 fax
berg@sbllp.net

## JURY TRIAL DEMAND

Plaintiff in Counterclaim, GTECH Corporation, hereby demands a trial by jury on all issues suitable for jury consideration.

/s/ Andrew Berg

## CERTIFICATION OF SERVICE

I hereby certify that on this 23rd day of November 2007, a true copy of the above Answer and Counterclaim was served by electronic filing upon the following counsel of record:

Mitchell R. Edwards, Esquire
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza
Suite 1500
Providence, RI 02903

/s/ Andrew Berg

Courtesy copy (by email) to:

Robert B. Lovett, Esquire
Cooley Godward Kronish LLP
The Prudential Tower
800 Boylston Street
46th Floor
Boston, MA 02199