UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IDEO, INC.,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>GTECH CORPORATION,<br><br>Defendant/Counterclaimant. | Case No. 07-404 ML |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff IDEO, Inc. ("IDEO") respectfully moves this Court for entry of a preliminary injunction restraining Defendant GTECH Corporation ("GTECH" or "Defendant") and all persons acting on GTECH's behalf, during the pendancy of this action, from: (1) using, displaying, exploiting, selling, distributing or manufacturing the product developed under the IDEO Services Agreement and Statement of Work dated on or about January 2006, including but not limited to the "Game Guard" product; and (2) from using, disclosing, exploiting, displaying, selling, transferring, assigning or licensing in any manner the intellectual property owned or developed by IDEO under the Services Agreement. In support of this Motion, IDEO submits a Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and the Affidavit of David J. Privitera.

WHEREFORE, IDEO, Inc. respectfully requests this Court to grant its Motion for Preliminary Injunction and enter an injunction in substantially the form as Exhibit A attached hereto.

Respectfully submitted,

IDEO, INC.

/s/ Mitchell R. Edwards

Mitchell R. Edwards (Bar No. 6942)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
Telephone: (401) 457-5122
Facsimile: (401) 457-5123
Email: medwards@haslaw.com

and

Of Counsel

Robert B. Lovett (BBO #561691)
COOLEY GODWARD LLP
The Prudential Tower
800 Boylston Street
46th Floor
Boston, MA 02199
Telephone: (617) 937-2300
Facsimile: (617) 937-2400
Email: rlovett@cooley.com

(pro hac motion to be filed)

Dated: December 13, 2007

**CERTIFICATION OF SERVICE**

I hereby certify that on this 13th day of December 2007, that I caused a true copy of this Plaintiff's Motion for Preliminary Injunction to be filed, via electronic case filing, to the following counsel of record:

Andrew Berg, Esquire
Sammartino & Berg LLP
128 Dorrance Street
Suite 400
Providence, RI 02903

/s/ Mitchell R. Edwards
MITCHELL R. EDWARDS

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IDEO, INC.,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>GTECH CORPORATION,<br><br>Defendant/Counterclaimant. | Case No. 07-404 ML |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

## I. INTRODUCTION

This Motion for Preliminary Injunction seeks to preserve the status quo until trial by preventing the defendant GTECH Corporation ("GTECH") from disclosing, selling, manufacturing or distributing products based on IDEO, Inc.'s ("IDEO") valuable intellectual property, including, but not limited to, trade secrets, proprietary design and engineering specifications, design concepts, inventions and know-how.

As set forth in the accompanying affidavit of IDEO's Boston Location Director, David J. Privitera, IDEO is entitled to injunctive relief for the following reasons: (1) GTECH is planning to manufacture and distribute its "Game Guard" product, which incorporates IDEO's intellectual property, without having obtained IDEO's authority to do so. GTECH does not have *any* legal right to use or sell any of IDEO's intellectual property or design work. IDEO designed and engineered a retail-clerk-operated Instant Ticketing Vending Machine for GTECH. The parties expressly agreed that GTECH would not have any rights to the IDEO design information and related intellectual property if the Services Agreement between them was breached; and (2) it is

IDEO's understanding that GTECH is working to bring the new product designed by IDEO to market in the very near future – in all likelihood before any trial of this dispute can occur. The public disclosure of IDEO's proprietary design information, trade secrets and related intellectual property could: (a) make it impossible for IDEO to pursue intellectual property protections for this valuable information; (b) destroy the legal protections available for its trade secrets, or (c) make it much more difficult for IDEO to enforce its IP rights (once the product is in the supply chain).

Accordingly, IDEO is entitled to a preliminary injunction against GTECH.

## II. FACTUAL BACKGROUND

IDEO is a consulting company that, among other things, provides product design services for a wide variety of industries. IDEO is well-recognized as one of the leading product design firms in the country with its designs routinely winning awards for both their aesthetic appeal and functionality. David J. Privitera Affidavit ("Privitera Aff.") ¶ 2. GTECH is a gaming technology and services company. Privitera Aff. ¶ 3.

### A. IDEO AND GTECH ENTERED INTO A SERVICES AGREEMENT.

In or about January of 2006, IDEO and GTECH entered into the "IDEO Services Agreement" (the "Services Agreement") whereby IDEO agreed to redesign GTECH's Game Guard product, a retail-clerk-operated Instant Ticketing Vending Machine ("ITVM"). Compl. ¶ 6, Privitera Aff. ¶ 4, Exhibit A.[1] Pursuant to the Services Agreement, IDEO and GTECH agreed that IDEO would perform certain design and development work as specified in the "statement of work," which was Exhibit A to the Services Agreement (the "SOW"). The statement of work divided IDEO's design work into four phases, and specified the initial budget, timing and deliverables for each phase of the project. Privitera Aff. ¶¶ 5-6.

[1] A true and correct copy of the Services Agreement is attached to the Affidavit of David J. Privitera as Exhibit A.

During the term of the Agreement and pendency of the project, which was completed from IDEO's side by May 2007, IDEO complied with all of its contractual obligations to GTECH, and completed its four phases of work, including its design work under the Services Agreement and the SOW. During the project, IDEO devoted substantial resources and money towards the development of the intellectual property for GTECH. Towards the end of the project, IDEO and GTECH agreed to a written modification of the Services Agreement. Privitera Aff. ¶¶ 6-7; Exhibit C. IDEO agreed to reduce its Phase 4 payment in return for a reduction in the Phase 4 Deliverables as to which IDEO would be responsible. Shortly thereafter, Phase 4 and the project as a whole was completed, and IDEO subsequently invoiced GTECH on or about June 1, 2007. Privitera Aff. ¶ 8. During either the thirty days following completion of the project, or the thirty days following the final invoice, IDEO never received any complaints from GTECH regarding the project or any of the Deliverables. Moreover, during the course of the Services Agreement, IDEO satisfactorily responded to GTECH's comments and suggestions regarding the Deliverables. Privitera Aff. ¶ 8.

Despite this agreement, GTECH has failed and refused to pay IDEO the outstanding $146,000 payment (plus accumulating late payment charges), which amount remains due and owing. Per Section 4.2 of the Agreement, payment was due "net sixty (60) days," and remains overdue. Exhibit A, § 4.2. In fact, after the project was completed and GTECH's payment had not been received, it was only then that GTECH concocted the post hoc excuse that it was dissatisfied to avoid payment but nonetheless keep IDEO's intellectual property.

### B. GTECH DOES NOT OWN OR HAVE A RIGHT TO USE ANY INTELLECTUAL PROPERTY UNDER THE SERVICES AGREEMENT OR THE SOW.

Given GTECH's failure to pay IDEO in full for its services under the Services Agreement and SOW, GTECH has no rights in any intellectual property that IDEO provided to

GTECH or developed under the contracts. Indeed, according to the Services Agreement, any assignments and licenses to GTECH of the intellectual property developed, owned or used by IDEO under the contracts are effective only when "(i) [GTECH] notifies IDEO in writing of its acceptance of the Deliverables for the Services or corresponding Phase; and (ii) IDEO is paid all amounts to which IDEO is entitled for the Services or the corresponding Phase." Privitera Aff. ¶ 9., Exhibit A, § 6.5 (emphasis added). In addition, IDEO retains all right, title and interest in any and all of its design processes and pre-existing works (defined as "IDEO Materials") and only granted GTECH a limited license in this information to the extent IDEO was paid in full, which it was not. *Id.* Exhibit A, § 6.2. These protections, particularly Section 6.5, were inserted into the Services Agreement to protect IDEO in precisely this type of situation by making sure that IDEO maintained all of its rights to its intellectual properties in the event that GTECH breached the Services Agreement.

GTECH has absolutely no right to any of the designs, process or deliverables as defined by the parties' agreement, let alone the right to make, use or sell products incorporating IDEO's designs. Exhibit A, § 6.5. GTECH has no right to the following intellectual property developed under the Services Agreement: any inventions or discoveries conceived, created, developed under or in connection with the Services Agreement and SOW; and any know-how, trade secrets, trade dress, copyrights and items that could be patented. Privitera Aff. ¶ 12. Such intellectual property includes all mechanical, electrical, firmware, industrial and interaction designs of GTECH's handheld and Game Guard unit, an engineering validation unit, documentation package suitable for manufacturing, production and mechanical drawings, design packages, LED Board design packages, production CAD databases for the chassis, plastic parts, PCB, source code, drawings for all labels and graphics, and mechanical drawings package consisting of 3D

CAD models and part drawings and assembly drawings in Pro-E native format, schematics, layouts and netlists, and cable drawings. *Id.* A preliminary injunction is necessary to prevent GTECH from using any of this intellectual property until the case is decided on its merits.

Moreover, pursuant to the Services Agreement, GTECH has access to IDEO's intellectual property and other proprietary information. Exhibit A, § 5.1, 5.3. Under Section 5.3 of the Services Agreement, GTECH cannot use any of IDEO's confidential information except to carry out GTECH's obligations under the Services Agreement. *Id.* § 5.3. In addition, GTECH acknowledged that it has no license or other interest in IDEO's confidential or proprietary information. *Id.* A preliminary injunction would protect IDEO from use or disclosure of this information by GTECH.

### C. GTECH IS USING IDEO'S INTELLECTUAL PROPERTY IN VIOLATION OF THE SERVICES AGREEMENT.

According to industry sources, GTECH is using IDEO's intellectual property to sell, manufacture and distribute its Game Guard product. Privitera Aff. ¶ 12. Given GTECH's failure to pay, GTECH has no right to this intellectual property. Indeed, IDEO has learned that GTECH has initiated manufacturing and is planning an initial market launch of 400 units based on IDEO's intellectual property. Privitera Aff. ¶ 12.

## III. <u>ARGUMENT</u>

### A. IDEO IS ENTITLED TO INJUNCTIVE RELIEF.

The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs. *Pye v. Teamsters Local Union No. 122*, 61 F.3d 1013, 1021 (1st Cir. 1995); *see also Allen v. Creative Services, Inc.*, 1992 WL 813643, at *4 (R.I. Super. July 6, 1992) ("The purpose of a preliminary injunction is merely to hold matters

approximately in status quo, until the cause may be properly and finally heard and determined on its merits."). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830 (1981).

IDEO is entitled to a preliminary injunction under the four relevant factors: (1) IDEO has shown a likelihood of success on the merits of its breach of contract claim and chapter 93A claim because GTECH has failed to pay sums due and owning under the contracts, yet continues to use intellectual property developed and still owned by IDEO; (2) the potential for irreparable harm favors IDEO because irreparable harm is presumed where intellectual property is involved; (3) a balancing of the relevant equities favors IDEO; and (4) the effect on the public interest of a preliminary injunction favors IDEO. *Cohen v. Brown University*, 809 F.Supp. 978, 984 (D.R.I. 1992).

As described below, the facts of this case demonstrate that IDEO is entitled to a preliminary injunction to protect IDEO's valuable intellectual property from impairment by GTECH's use and disclosure prior to trial. GTECH has breached its contract with IDEO, and, therefore GTECH has absolutely no right to misuse or exploit the intellectual property. Moreover, the parties clearly bargained for and agreed that, in the event of GTECH's breach and failure to pay IDEO and accept the contract deliverables, IDEO would retain all rights to the intellectual property relating to its design services.

## B. IDEO WILL PROVE THE MERITS OF ITS CLAIMS.

### 1. IDEO Is Likely to Prevail on Its Breach of Contract Claim.

There is no dispute that IDEO will prove at trial that GTECH breached its contract with

IDEO by failing to pay IDEO under the Service Agreement and continuing to use the intellectual property developed and owned by IDEO.[2] *See, e.g.*, *Tangorre v. Mako, Inc.'s*, 2003 WL 470577 (S.D.N.Y. Jan. 6, 2003) (enforcing condition precedent of payment before allowing ownership of copyright information). First, GTECH has admitted in this action that the Services Agreement is a valid and binding agreement. Answer, ¶¶ 7, 8; Counterclaims ¶¶ 14, 18. Second, IDEO performed all of its obligations under the contract, providing all of the requested design services set forth in the SOW, including all notice provisions. Privitera Aff. ¶ 11. Third, GTECH has not paid the amounts owed to IDEO.[3] As a result of its failure to pay the amounts due and owing to IDEO, GTECH is in breach of the Services Agreement. Furthermore, GTECH also has breached the Services Agreement because it has used and exploited IDEO's intellectual property developed under the Services Agreement. GTECH currently has no such rights: GTECH's rights of ownership in the Deliverables provided by IDEO, as well as GTECH's right of license to IDEO intellectual property, trade secrets, know how, and other information incorporated into the Deliverables, were contingent on and strictly conditioned by Section 6.5 of the contract which GTECH has not met:

> "The above assignments and licenses [as set forth in Section 6 of the Services Agreement] are effective only when: (i) client notifies IDEO in writing of its acceptance of Deliverables for the Services or corresponding phase; and (ii) IDEO is paid all amounts to which IDEO is entitled for the Services or the corresponding phase."

Exhibit A, § 6.5 (emphasis added).

Moreover, GTECH's claim that IDEO did not meet its obligations under the Services

---

[2] Under Rhode Island law, IDEO will prove the elements of a breach of contract: 1) the existence of a valid enforceable contract, the Services Agreement and the SOW; 2) breach by GTECH, failing to pay for the performed services; and 3) resulting injury to IDEO. *See Petrarca v. Fidelity and Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005).

[3] Additionally, although GTECH has not notified IDEO in writing that it has accepted the deliverables, GTECH's acceptance may be presumed because GTECH, after having had the opportunity to review the deliverables, failed to allege any deficiency within 30 days following the end of the project nor within more than 6 months following conclusion of Phase 3.

Agreement – significantly after the fact and in hindsight – is a red herring. GTECH's revisionist history cannot entitle GTECH to selectively back out of the contract terms, refuse to pay the amounts owed, and still be the owner of the intellectual property developed by IDEO related to the Game Guard. GTECH's efforts to avoid its obligations through fabricating problems with IDEO's performance under the Services Agreement (a) ignore the plain language of Section 2.2 of the Services Agreement (that GTECH needed to "report [any] alleged deficiency to IDEO within thirty (30) days after the earlier of . . . conclusion of the phase") and (b) blatantly violate Section 6.5 of the Services Agreement by proceeding with manufacturing the product, and attempting to exploit IDEO's intellectual property without having paid IDEO therefore.

As a result, IDEO has shown a likelihood of success of its breach of contract claim.

**2. GTECH Has Violated Chapter 93A.**

IDEO also will prove that GTECH violated Massachusetts Chapter 93A by failing to pay a contract amount due and owing and using IDEO's intellectual property without a valid license or assignment.[4] GTECH's use of IDEO's trade secrets without a valid license, assignment or other permission alone violates chapter 93A. *See, e.g., Single Gourmet, Inc. v. Burgos*, 2005 WL 1477723, at *2 (Mass. Super. May 5, 2005) (finding that contractor violated chapter 93A by failing to return confidential information owned by party to the contract). In addition, GTECH's intentional breach of a contract, which was to gain IDEO's development of intellectual property without paying for it – also constitutes a 93A violation. *Ecological Fibers, Inc. v. Kappa Graphic Bd. B.V.*, 345 F.Supp.2d 13, 15-16 (D. Mass. 2004) (plaintiff stated 93A claim where defendant entered into an agreement and never intended to carry out the terms of the agreement for the full five-year term, but rather entered into it for the purpose of obtaining information

---

[4] GTECH's unfair and deceptive business practices, which occurred primarily and substantially within Massachusetts, trigger liability under Massachusetts General Laws Chapter 93A. *See* M.G.L. Ch. 93A § 11.

about and soliciting plaintiff's customers).

### C. IDEO WILL SUFFER IRREPARABLE HARM UNLESS GTECH'S USE OR TRANSFER OF IDEO'S INTELLECTUAL PROPERTY IS ENJOINED.

IDEO has no adequate remedy at law and will suffer irreparable harm unless the Court issues a preliminary injunction. Most importantly, as a matter of law, courts presume irreparable harm due to GTECH's wrongful use of IDEO's intellectual property. *See, e.g., Pickler Intern. Corp. v. Imaging Equipment Services, Inc.*, 931 F.Supp. 18, 44 (D. Mass. 1995) ("The misuse of trade secret is generally deemed to involve irreparable harm.") Once a moving party demonstrates *some likelihood of success on the merits*, irreparable harm is presumed for intellectual property violations. *See Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992); *Concrete Machinery Company v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 611 (1st Cir. 1988). Therefore, GTECH's unauthorized and unlicensed use and disclosure of IDEO's intellectual property, trade secrets, and designs, in violation of the parties' agreement, entitles IDEO to a preliminary injunction.

Moreover, the potential disclosure of IDEO's proprietary design information, trade secrets and related intellectual property – that was provided to GTECH under the terms of the Services Agreement – also amounts to irreparable harm and cannot be compensated by money damages. *See, e.g., Allen v. Creative Services, Inc.*, 1992 WL 813643, at *3 (R.I. Super. July 6, 1992) (finding irreparable harm because proprietary information would lose its protection if disclosed); Pickler, 931 F.Supp. at 44 (imposing injunction because money damages will not suffice for misappropriation of trade secrets). Indeed, disclosure of IDEO's intellectual property – even to GTECH's manufacturers and fabricators – likely would (a) destroy the legal protections available for trade secrets (because public disclosure can cause a trade secret to lose

its status as a trade secret);[5] (b) impair the ability of IDEO to enforce its intellectual property rights (because if such matters as the trade secrets, design information, engineering information and design concept, are disclosed to the general public through product sales, then IDEO may not have the ability to enforce its rights against innocent third parties who were not aware that GTECH's disclosure of the intellectual property was wrongful);[6] (c) make it impossible for IDEO to sell this intellectual property to another party (because once the intellectual property, trade secrets, know how and design concepts are revealed publicly, third parties would be unlikely to pay IDEO for such information);[7] and (d) make it much more difficult for IDEO to enforce its IP rights (because once GTECH puts the IDEO product into the chain of distribution and sells to customers, IDEO would be force to sue multiple parties to protect its rights). However, the limited injunction IDEO seeks to maintain the status quo would prevent these harms from occurring.

### D. THE BALANCE OF HARMS STRONGLY WEIGHS IN FAVOR OF IDEO.

The balance of harm also strongly favors granting a preliminary injunction to protect IDEO. The terms of the Services Agreement compel the issuance of a preliminary injunction here because the parties *have already agreed about how to balance the harms*. *See, e.g.*, *Stone Legal Resources, Inc. v. Glebus*, 2003 WL 914994, at *7 (Mass. Super Ct. Feb. 2003) (holding that balance of harms favors seeking injunction because party has demonstrated the enforcement of the agreement will prevent irreparable harm). IDEO and GTECH – two sophisticated parties

---

[5] *See, e.g., Fisher Store, Inc. v. Stove Works, Inc.*, 626 F. 2d 193, 196 (1st Cir. 1980) ("In order to be protected, a trade secret must truly be protected."); *Parking Co., L.P. v. Rhode Island Airport Corp.*, 2005 WL 419827 (R.I. Super. Feb. 18, 2005) (disclosure of trade secrets ruins trade secret protection).

[6] *See, e.g., Allen*, 1992 WL 813643, at *3 (imposing injunction because company will suffer loss of good will from disclosure).

[7] *See, e.g., Home Gas Corp. v. DeBlois Oil Co.*, 691 F.Supp. 567, 574 (D.R.I. 1987) (restraining use of trade secret due to loss of competitive advantage); *Merrill Lynch, Pierce, Fenner & Smith*, 2004 WL 1515502, at *3 (Mass. Super. June 30, 2004) (potential loss of trust and confidence in trade secrets is irreparable harm).

with the advice of counsel – explicitly bargained that IDEO would maintain the right to all of its intellectual property and that GTECH would receive no rights unless and until certain conditions were met, namely, until (1) IDEO was paid in full and (2) GTECH had accepted the deliverables. *See* Services Agreement § 6.5. While GTECH's acceptance is presumed from failing to timely notify IDEO of any alleged deficiencies, GTECH has not paid the amounts owed and, notwithstanding the express terms of the agreement, still expects to carry away rights to IDEO's developed work. IDEO and GTECH *did agree* in their services contract that IDEO should maintain its intellectual property rights until all payments had been made.[8] Therefore, GTECH's execution of the Services Agreement precludes any argument that the balance of the harms tips against IDEO and for GTECH.

Second, in light of the clear contract terms, permitting GTECH to manufacture, sell and distribute Game Guard units with IDEO's intellectual property in clear violation of the Services Agreement would allow GTECH to have its cake and eat it too. GTECH cannot refuse to pay IDEO and then continue to use IDEO's intellectual property anyway without a valid license or assignment. GTECH's choice to breach the agreement was done at its own peril, and a preliminary injunction should preserve the status quo in the interim.[9]

This is a situation where, once the bell has been rung, it cannot be un-rung. *See Fisher*, 626 F. 2d at 196. In other words, once GTECH has publicly disclosed IDEO's intellectual

[8] The fact that IDEO and GTECH agreed that a condition precedent of full payment should precede ownership of the intellectual property tips the balance of the harms in IDEO's favor. *Cf. Meisner Brem Corp. v. Mitchell*, 313 F. Supp. 2d 13 (D.N.H. 2004). In *Meisner Brem*, the court did not grant a preliminary injunction in part because the court the plaintiff did not bargain for in its contract with the defendants. *Id.* at 17-18. The *Meisner Brem* court noted that the plaintiff, the owner of copyrighted engineering and surveying plans for a residential subdivision, could have negotiated for adequate safeguards to ensure payment –including a provision that conditions the defendant Project Owner's license to use the plaintiff's intellectual property on payment in full. *Id.* Because it did not, the court was reluctant to grant a remedy that the parties did not bargain for. *Id.*

[9] Finally, the harm to IDEO for denying its motion is substantial. As noted above, any possible disclosure of IDEO's intellectual property and trade secrets may have dire consequences for IDEO. *See supra* 9-10. This also suggests that the balance of the harms favors IDEO.

property, design concepts, and engineering, the ability of IDEO to obtain intellectual property protections will be impaired, the value of the design concepts and related IP will be diminished, and IDEO's ability to profit from this intellectual property will be impaired. Further, once the product has been delivered to the distribution chain, retailers and customers, it will become extremely difficult for IDEO to enforce its right to stop the use of its intellectual property. For all of these reasons, the balance of harms tip sharply in favor of issuing an injunction to preserve IDEO's intellectual property until trial.[10]

## IV. CONCLUSION

For the foregoing reasons, this Court should grant IDEO's motion for a preliminary injunction and enjoin GTECH, its directors, officers and agents from using, selling, transferring or otherwise dispossessing itself of IDEO's intellectual property until this dispute is resolved at trial.

[10] The public interest would be served with the issuance of a preliminary injunction for IDEO. "It is in society's best interest to recognize and enforce agreements which were voluntarily entered into and accepted. Allowing an individual to disregard such a promise would result in behavior which should not be condoned or encouraged." *New England Circuit Sales, Inc. v. Randall*, 1996 WL 1171929, at *3 (D. Mass 1996).

Respectfully submitted,

IDEO, INC.

/s/ Mitchell R. Edwards

Mitchell R. Edwards (Bar No. 6942)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
Telephone: (401) 457-5122
Facsimile: (401) 457-5123
Email: medwards@haslaw.com

and

Of Counsel

Robert B. Lovett (BBO #561691)
COOLEY GODWARD LLP
The Prudential Tower
800 Boylston Street
46th Floor
Boston, MA 02199
Telephone: (617) 937-2300
Facsimile: (617) 937-2400
Email: rlovett@cooley.com

(pro hac motion to be filed)

Dated: December 13, 2007

**CERTIFICATION OF SERVICE**

I hereby certify that on this 13th day of December 2007, that I caused a true copy of this Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction to be filed, via electronic case filing, to the following counsel of record:

Andrew Berg, Esquire
Sammartino & Berg LLP
128 Dorrance Street
Suite 400
Providence, RI 02903

/s/ Mitchell R. Edwards
MITCHELL R. EDWARDS