# EXHIBIT A

# IDEO Services Agreement

Thank you for choosing to do business with IDEO. This Agreement sets forth our mutual responsibilities regarding IDEO's provision of certain design services, and your payment to IDEO of the Fees described in this Agreement (or its attachments) which are typically comprised of service fees and out-of-pocket costs. IDEO is agreeing to provide certain design services, potentially in furtherance of one or more Client Offerings (defined below); however, there are many other elements and steps involved in developing a Client Offering as to which IDEO has little or no visibility, involvement or authority. Thus, this Agreement is an agreement to outsource the limited services referenced herein, and not a shift in responsibility and/or liability associated with a Client Offering. This Agreement is to be construed and interpreted in accordance with this general purpose.

| | | | |
|---|---|---|---|
| **Enterprise Name ("Client"):** | **GTECH Corporation** | **Jurisdiction of Incorporation:** | **Delaware** |
| **Street Address:** | **55 Technology Way** | | |
| **City:** | **West Greenwich** | **State & Zip Code:** | **RI 02817** |
| **Enterprise Contact (Name & Title):** | **Agreement Number:** | | |

**Effective Date:** ____________________, 2005

**List of Exhibits:**

☐ **A: SOW/Proposal** ☐ **B: Change Order Template** ☐ **C: (other)** ☐ **D: (other)**

This IDEO Services Agreement (the "Agreement") is entered into by and between IDEO Inc., a Michigan corporation ("IDEO"), having a principal address at 100 Forest Avenue, Palo Alto, CA 94301, and the enterprise identified above ("Client").

## 1 DEFINITIONS

The following terms when used in this Agreement shall have the following meanings:

**1.1 "Client Offering"** means one or more of Client's current or contemplated product or service offerings incorporating, in whole or in part, any Deliverables or otherwise based on or derived from the Services or any Deliverables.

**1.2 "Deliverables"** means the tangible takeaways provided by IDEO to Client as specified in the applicable SOW for the corresponding Phase of the Services. Consistent with the foregoing, and notwithstanding anything to the contrary in any SOW or otherwise, a Deliverable is not an activity or event (e.g., brainstorming session, training, IDEO U, etc.), rather it is a tangible result of any such event or activity provided by IDEO.

**1.3 "Design Process"** means any and all methods, materials, technologies, approaches, techniques and other know-how relating to IDEO's innovation and design processes.

**1.4 "Key Personnel"** means an individual IDEO designer spending more than twenty (20) hours on a particular project.

**1.5 "Phase"** means a division of the Services according to the type of Services rendered during each said phase, according to IDEO's description thereof as further set forth in the applicable SOW.

**1.6 "Pre-Existing Work"** means any and all methods, materials, technologies, approaches, techniques and other know-how developed prior to and/or independent of the Services provided hereunder.

**1.7 "Services"** means the design services for which IDEO has been engaged to perform hereunder, as further specified in the SOW.

**1.8 "Statement of Work" or "SOW"** means a proposal or other documentation executed herewith and attached hereto as Exhibit A, or executed subsequently by the parties referencing this Agreement, that specifies the scope of Services of

a particular project, including activities, Deliverables, time schedule, Fees, and other responsibilities of the parties with respect to the Services and each Phase thereof.

## 2 ENGAGEMENT; STANDARD OF SERVICE

**2.1** Engagement; Scope of Services. Client hereby engages IDEO, and IDEO agrees to perform the Services. This is a contract for services and not for the sale of goods.

**2.2** Standard of Service. Client acknowledges and agrees that the innovation process is often and expectedly unpredictable, and as a result the desired outcome cannot be guaranteed. IDEO will perform the Services in accordance with the prevailing standard for professional consultancy firms providing similar services in effect at the time of such performance. IDEO will determine the methods, details and means of performing such Services in its reasonable discretion. If IDEO fails to perform the Services in accordance with the foregoing (which expressly includes the failure to deliver the Deliverables of any Phase in accordance with the SOW requirements and on or prior to the timelines established in the SOW) Client may in its discretion, require IDEO to reperform such Services without charge for ~~IDEO's time expended~~, provided Client reports such alleged deficiency to IDEO within thirty (30) days after the earlier of: (i) conclusion of the corresponding Phase, or (ii) IDEO's issuance of a final invoice for such Phase. Services shall be deemed accepted by Client if Client does not inform IDEO of any alleged deficiencies in the Services within the prescribed time. If following such notice and reperformance of Services, IDEO fails to correct the bases for such non-performance, then Client may terminate this Agreement immediately upon written notice to IDEO. IDEO will have no liability (a) to the extent deficiencies are the result of Client's acts or omissions, or (b) where Client has instructed IDEO to perform the Services in a particular manner or in accordance with a particular schedule notwithstanding IDEO's contrary advice.

**2.3** Change Order and Service Modifications. Concurrently with or promptly following the execution of this Services Agreement, the Parties will agree upon and execute a SOW setting forth the Deliverables, the specifications of such Deliverables, and the dates upon which Deliverables shall be required to be delivered. Any material change in the scope of Services or a Phase thereof (including appropriate revisions to Fees to be paid therefore) shall be reduced to writing and signed by the parties in a Change Order. **"Change Order"** means a written acknowledgement between the parties substantially in the form of Exhibit B that sets forth material changes to the scope of a specific SOW, such as: (i) the level of Services provided, (ii) any specifications to which the Services are expected to conform, (iii) schedules and timelines, and/or (iv) Fees payable hereunder. IDEO shall have no obligation to commence, perform or complete any work affected by a material change to the scope of Services unless agreed to in a Change Order, notwithstanding any good faith efforts by IDEO to accommodate or implement such changes prior to or without a Change Order.

**2.4** Timelines and Dates. IDEO will use best efforts to meet the established timeline stated in the SOW and any revised dates agreed to in a Change Order.

**2.5** Warranty. IDEO represents and warrants that the performance of this Agreement will not breach any duty owed by IDEO to any other person or business entity, or under any law, court order, rule or regulation of a governmental body.

## 3 OTHER OBLIGATIONS OF THE PARTIES

**3.1** Information Provided by Client. Client assumes responsibility for any information and/or specifications it provides to IDEO and agrees that IDEO may rely on such information and/or specifications without independent verification.

**3.2** Product Testing and Field Qualification. Client is responsible for adequately testing and field qualifying any Client Offering which Client chooses to market and/or sell, whether or not based on the Services or Deliverables provided hereunder. Client is further responsible for complying with any and all laws, regulations or other governmentally imposed requirements relating to any Client Offering.

## 4 COMPENSATION; TERMS OF PAYMENT

**4.1** Basis of Compensation. The SOW states the basis on which IDEO will charge for the Services, including the labor of IDEO employees and subcontractors and expenses (e.g., travel and subsistence, communications, couriers, materials, disposal costs, use of specialized equipment, and other project expenses) (collectively, the "Fees"). Client's obligation to pay the Fees under this Agreement shall apply to IDEO only and not to any related entity or individual.

**4.2** Terms of Payment. Any deposit stated in an SOW is due prior to IDEO commencing work and shall be applied to the final invoice(s). Client shall pay all Fees in accordance with the schedule stated in the SOW (or, if a schedule is omitted, monthly). Fees are due and payable net sixty (60) days from the invoice date. Payment of all Fees shall be

made in lawful United States currency. IDEO will assess a late payment charge on any Fees not paid when due at the rate of one percent (1%) per month, or, if less, the maximum permitted by law.

**4.3** Taxes. All taxes, duties, fees and other governmental charges of any kind (including sales and use taxes, but excluding taxes based on IDEO's net income) which are imposed by or under the authority of any government or political subdivision thereof on the Fees or any aspect of this Agreement ("Taxes") shall be borne by Client and shall not be considered a part of, a deduction from, or an offset against Fees. Client agrees to pay and indemnify IDEO against all Taxes, and any interest and penalties associated therewith, whether levied or invoiced at or after the time of performance.

## 5 CONFIDENTIALITY

**5.1** General. It is anticipated that the parties will exchange certain proprietary information necessary to efficiently and effectively perform of the Services, and in order for each party to access, use and necessarily track the other party's proprietary information, the parties agree as follows:

**5.2** Definition. "Confidential Information" as used in this Agreement means any and all technical and non-technical information disclosed by a party (each a "Discloser") to the other party (each a "Recipient"), provided: (i) if such information is disclosed in tangible form, it is conspicuously marked to identify its confidential or proprietary nature, or (ii) if such information is disclosed orally or by other intangible means, it is identified as confidential at the time of disclosure and confirmed in writing within thirty (30) days of disclosure. Notwithstanding the above, Confidential Information shall not include information that:

(a) was in the public domain at the time it was disclosed or has subsequently entered the public domain through no fault of the Recipient;
(b) was rightfully in Recipient's possession free of any obligation of confidence at or subsequent to the time it was communicated to Recipient by Discloser;
(c) is independently developed by Recipient by persons without use of Discloser's Confidential Information as documented by competent records;
(d) was communicated by Discloser to an unaffiliated third party free of any obligation of confidence; or
(e) is disclosed pursuant to a valid order by a court or other governmental body, as otherwise required by law, or as necessary to establish the rights of either party under this Agreement; provided, that the Recipient shall provide the Discloser with immediate written notice and shall cooperate with Discloser in any action to prevent or limit such release.

**5.3** Use Limitations/Nondisclosure Obligation/Duty of Care. Each party agrees as a Recipient: (a) not to use any Confidential Information of the other party for any purpose except in furtherance of its obligations hereunder; (b) it shall disclose Confidential Information of the other party only to its employees or contractors who need to know such information in order to carry out obligations hereunder, and certifies that such individuals have previously agreed, either as a condition to employment or in order to obtain the Confidential Information, to be bound by terms and conditions substantially similar to those of this provision; and (c) to treat all Confidential Information of the other party with the same degree of care as it accords its own Confidential Information of a similar nature, but in no case less than reasonable care. Recipient acquires no license or other interest in or to Discloser's Confidential Information. The forgoing obligations shall continue for a period of five (5) years following disclosure of the subject Confidential Information.

**5.4** Independent Development/Freedom of Action. Nothing in this Agreement will be construed as a representation or inference that the other party will not develop products, or have products developed for it, that, without violation of this Section 5, compete with the products or services contemplated by the disclosing party's Confidential Information. This Agreement shall not prevent a party from using information that is standard or generic, nor shall the mere exposure or access by Recipient or its personnel to Discloser's Confidential Information be construed to restrict Recipient from reassigning or otherwise deploying its personnel in its sole discretion.

**5.5** Access to Party's Premises. In the course of providing the Services, each party ("Visiting Party") may, from time to time, have occasion to visit the other party's premises ("Host Party"), in which case each of Visiting Party's personnel shall execute Host Party's standard terms of confidentiality in effect at the time for granting access to Host Party facilities.

**5.6** Existence of Agreement. IDEO shall not disclose the existence or contents of this Agreement to any other person or organization, with the exception of IDEO's legal or financial advisors, unless IDEO first obtains Client's specific written permission to do so or is compelled to do so by an order of a court having proper jurisdiction over the parties or the subject matter of this Agreement.

**5.7** Nondisturbance of Business Relationships. During the term of this Agreement and for twelve (12) months thereafter, neither party shall knowingly, directly or indirectly, disturb any business relationships between the other party and its existing or prospective customers, suppliers or other business associates, nor shall it assist anyone else to do so.

## 6 OWNERSHIP; LICENSES

**6.1** Ownership by Client. Subject always to IDEO's interest in IDEO Materials (defined in Section 6.2 below), Client will be the sole owner of (i) all Deliverables provided to Client hereunder; (ii) copyrights in any works of authorship fixed in said Deliverables, and (iii) inventions or discoveries conceived, created, developed under or in connection with this Agreement and which are described or embodied in one or more Deliverables, together with all intellectual property rights related to the foregoing. Subject to Section 6.4 below, IDEO makes or agrees to make a full, irrevocable assignment to Client of all such rights. IDEO will cooperate with Client to execute and file legally appropriate documents to record Client's ownership of such copyrights and patent rights at Client's request and expense. IDEO represents and warrants that, to the best of its knowledge, it has all the rights necessary to transfer the foregoing rights or has authorizations from all parties concerned, including from any agents and subcontractors in order to do so, free from any encumbrances, liens or third party claims.

**6.2** IDEO Rights in Pre-Existing Work and Design Processes. Notwithstanding anything to the contrary herein, IDEO retains all right, title and interest in any and all Design Processes and Pre-Existing Works (collectively, "IDEO Materials"), and except for the limited license granted in Section 6.3, Client receives no other rights in or to IDEO Materials, whether by implication, estoppel or otherwise.

**6.3** License to IDEO Materials. To the extent any IDEO Materials are contained in Deliverables, IDEO grants Client a royalty-free, non-exclusive, perpetual, transferable, worldwide license to make, have made, use, and sell Client Offerings to the extent based on the Deliverables. Client expressly acknowledges and agrees that the forgoing license does not include the right to develop, offer or otherwise provide any product or service intended to replace or otherwise compete with the Services provided by IDEO hereunder, including without limitation the remarketing of IDEO Design Processes and improvements thereto. Subject to the foregoing sentence, IDEO acknowledges that Client is free to develop products that compete with the Services and Deliverables provided by IDEO hereunder.

**6.4.** Work for Hire. Subject to the rights of IDEO set forth in Section 6.2, all Deliverables provided by IDEO to Client under this Agreement is expressly provided as a Work Made for Hire. If any such Deliverable is not deemed a Work Made for Hire under applicable law, then IDEO hereby assigns any and all rights of ownership to any such Deliverables to Client, coupled with an irrevocable power of attorney naming each officer of Client as an attorney-in-fact to enforce such rights. IDEO agrees to execute all documents and take all actions necessary to enforce the foregoing assignment of ownership rights to Client.

**6.5** Conditions. The above assignments and licenses are effective only when: (i) Client notifies IDEO in writing of its acceptance of Deliverables for the Services or corresponding Phase; and (ii) IDEO is paid all amounts to which IDEO is entitled for the Services or the corresponding Phase.

**6.6** Return of Materials. All materials supplied by Client to IDEO shall remain the property of Client, and shall be returned to Client, with all copies thereof, when IDEO's assignment in the context of this Agreement is terminated, for whatever reasons; or immediately upon request by Client, without need to justify such a request. IDEO shall be responsible to obtain the return of all such materials immediately upon such person(s) ceasing to render any services hereunder to Client.

## 7 THIRD PARTY CLAIMS

**7.1** General. IDEO shall have no obligation to investigate the existence of any third party intellectual property rights, and IDEO expressly disclaims for itself and its personnel constructive knowledge of any third party intellectual property rights.

**7.2** Indemnification Obligation. IDEO, at its own expense, agrees to defend and hereby indemnifies and holds Client and their respective affiliates, directors, officers, employees, representatives, and agents harmless from and against any and all liabilities, suits, claims, losses, damages and judgments, however characterized ("Damages"), and shall pay all such Damages (including reasonable attorneys' fees) to the extent that such Damages arise from, or are related to a claim that the Deliverables or the Services infringe any third party's patent, copyright, trademark, trade secret or other intellectual property right actually known (as opposed to constructive knowledge) to any Key Personnel. (an "Infringement") (collectively, "Claims"). The foregoing indemnification obligation is subject to Client: (i) providing prompt written notice of any claim for which defense is sought; (ii) tendering control of such defense to IDEO (except

the authority to bind Client to perform any act or pay any sum); and (iii) providing reasonable assistance. Client shall have the right to retain counsel of its own choosing at any time at its sole cost and expense.

**7.3** IDEO Options. If such an action is brought, or IDEO reasonably determines in its discretion that such a Claim is likely to be made, IDEO shall have the option to (i) replace or modify the Deliverables so they are no longer infringing but functionally equivalent, or (ii) obtain the right for Client to continue using the Deliverables. If IDEO determines that neither of these alternatives is reasonably available, IDEO shall have the option to refund the Fees paid for the applicable Deliverables by Client hereunder and terminate this Agreement.

**7.4** Exclusions. The foregoing obligation will not apply to any Claim arising from (i) modification of Deliverables by parties other than IDEO, where the use of the Deliverables without such modification would not give rise to the Claim, (ii) use of Deliverables with other products or components, where the use of the Deliverable without such other product or component would not give rise to the Claim, or (iii) use of interim Deliverables where such infringement or misappropriation could have been avoided by use of subsequent or final Deliverables.

**7.5** Sole Remedy. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THE FOREGOING STATES IDEO'S ENTIRE LIABILITY AND CLIENT'S SOLE AND EXCLUSIVE REMEDY FOR CLAIMS OF INFRINGEMENT OR MISAPPROPRIATION OF THIRD PARTY RIGHTS.

## 8 PRODUCT LIABILITY; OTHER THIRD PARTY CLAIMS

**8.1** Product Liability. The parties acknowledge and agree that: (i) IDEO does not have visibility, access or substantive control over Client's marketing, manufacturing and/or distribution of any Client Offering; and (ii) unlike revenues received by Client for Client Offerings, the limited Fees payable to IDEO hereunder do not scale with the distribution and sale thereof. Therefore: (a) Client assumes full responsibility for final review, testing and approval of any and all features of any Client Offering; and (b) Client agrees to indemnify, defend and hold IDEO harmless from any Damages where a third party alleges that (x) it has been damaged by a defect in a Client Offering, or (y) a Client Offering misappropriates or infringes a third party's intellectual property rights, which claim is not subject to IDEO's obligations under Section 7 above.

**8.2** Design-Arounds. Client acknowledges and agrees that one particular feature of IDEO's design services *expertise is* in providing fresh perspectives and points of view relating to Client's business and/or the field of endeavor pertaining to the Services, and that IDEO is not an expert regarding the intellectual property issues relating to Client's business or field of endeavor. Thus, as part of the Services IDEO may, but only to the extent expressly stated in the applicable SOW, include efforts to develop a "work-around" of particular patents or trademarks provided by Client, provided:

> **8.2.1** IDEO's sole responsibility shall be to endeavor to design any such "work-around", and IDEO does not provide and is not responsible for providing legal analysis of the applicability of particular patents or trademarks in relation to Client's actual or contemplated products or services;
>
> **8.2.2** Client (i) is solely responsible for selecting and engaging counsel to perform any analysis Client considers desirable, (ii) retains the obligation and responsibility of determining the legal effect and implications of any such "work-around" efforts, and (iii) agrees to indemnify IDEO, its employees, directors, agents contractors, and assigns from and against any claims made by any third party based on information provided by Client and/or IDEO's involvement in any work-around efforts.

**8.3** Procedure for Claims. The indemnification obligations of this Section 8 are subject to IDEO: (i) providing prompt written notice of any claim for which defense is sought; (ii) tendering control of such defense to Client; and (iii) providing reasonable assistance and information..

## 9 WARRANTY DISCLAIMER; LIMITATION OF LIABILITY

EXCEPT AS MAY EXPRESSLY BE SET FORTH HEREUNDER, IDEO MAKES NO WARRANTIES OF ANY KIND, WHETHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, NONINFRINGEMENT OF THIRD PARTY RIGHTS, OR FITNESS FOR A PARTICULAR PURPOSE, ALL OF WHICH ARE HEREBY EXPRESSLY DISCLAIMED.

IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR INDIRECT DAMAGES OF ANY KIND, INCLUDING WITHOUT LIMITATION THOSE RELATING TO LOSS OF USE, INTERRUPTION OF BUSINESS AND/OR COST OF PROCUREMENT OF SUBSTITUTE GOODS, REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, TORT OR OTHERWISE, EVEN IF

ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. EXEPT FOR LIABILITY RESULTING FROM IDEO'S (I) INDEMNIFICATION OBLIGATION UNDER SECTION 7, (II) BREACH OF THE CONFIDENTIALITY PROVISIONS SET FORTH IN THIS AGREEMENT, OR (III) FRAUD OR INTENTIONAL MISCONDUCT, IDEO'S AGGREGATE LIABILITY SHALL NOT EXCEED THE TOTAL COMPENSATION PAID TO IT IN CONNECTION WITH THE STATEMENT OF WORK TO WHICH ANY SUCH LIABILITY RELATES. NOTWITHSTANDING THE GENERALITY OF THE FORGOING, IDEO'S LIABILITY HEREUNDER SHALL IN NO CASE EXCEED $10,000,000.

EACH PARTY HAS THE OBLIGATION TO MITIGATE DAMAGES IT MAY SUFFER HEREUNDER.

## 10 TERM AND TERMINATION

**10.1** Term. This Agreement shall commence on the Effective Date and remain in full force and effect for a period of two (2) years, unless previously terminated in accordance herewith; provided, if at the time of this Agreement's natural expiration Services are being performed pursuant to a current SOW, this Agreement shall be continued until the completion thereof.

**10.2** Termination. This Agreement may be terminated: (i) by either party in the event of a material breach by the other party, if such breach remains uncured for thirty (30) days following written notice thereof (without limiting the foregoing, Client's non-payment of Fees or failure to reasonably cooperate with IDEO in performance of the Services shall be a material breach hereof); (ii) by Client for any or no reason upon not less than thirty (30) days prior written notice; or (iii) by either party in the event voluntary or involuntary insolvency proceedings are instituted against the other party, which proceedings are not discharged within sixty (60) days.

**10.3** Effect of Expiration or Termination. In the event this Agreement expires or is terminated for any reason, (i) IDEO's obligation to provide Services shall cease, and (ii) Client shall pay IDEO Fees incurred prior to the effective date of such expiration or termination. If Client terminates this Agreement pursuant to 10.2(ii) above, Client will also pay IDEO for all reasonable costs incurred by IDEO to efficiently discontinue the Services within the thirty (30) day time period. Sections 3, 5, 6, 7, 8, 9, 10, and 11 will survive any expiration or termination.

## 11 MISCELLANEOUS

**11.1** Entire Agreement; No Wavier; Severability. This Agreement (including its exhibits or attachments) constitutes the parties' entire understanding and agreement with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements, representations and understandings between the parties regarding the subject matter hereof, including without limitation any request for proposal (RFP), purchase order, or other preprinted terms or documents provided by Client. Any conflict between the terms of this Agreement and any Statement of Work shall be resolved in favor of the terms of this Agreement. If any provision of this Agreement is found to be invalid or unenforceable, such provision shall be severed from the Agreement and the remainder of this Agreement shall be interpreted so as best to reasonably affect the intent of the parties hereto. This Agreement may be amended, and the observance of any term of this Agreement may be waived, only by a writing signed by the party to be bound.

**11.2** Governing Law; Jurisdiction. This Agreement governed by the laws of the State of Rhode Island without application of its conflicts of laws principles. The parties agree that the United Nations Convention on Contracts for the International Sale of Goods is specifically excluded from application hereto. In any proceeding relating hereto, the parties agree and hereby submit to the exclusive jurisdiction of the state and federal courts of Rhode Island.

**11.3** Independent Contractors. The relationship created between the parties hereto is that of independent contractors. Nothing herein creates a relationship of employer and employee, principal and agent, partnership or the like between Client, IDEO, or any of their affiliates or personnel. Neither party will have authority to enter into any contract on behalf of the other.

**11.4** Force Majeure. Except for payment of amounts due hereunder, neither party shall be liable to the other for delayed performance caused by events outside of its reasonable control, including war, civil unrest, fire, earthquake or other natural disaster; provided that the party affected by such force majeure provides prompt notice to the other party of the occurrence and uses reasonable efforts to overcome the effects of such force majeure.

11.5 Non-Solicitation. During the term of this Agreement and for one (1) year thereafter, Client agrees not to solicit for employment or hire, either for itself or for any third party, any IDEO personnel involved in performing or supervising the Services.

11.6 Notices. Any notice permitted or required under this Agreement will be in writing and mailed or delivered to the receiving party's address stated on the signature page or subsequently provided in writing.

11.7 No Assignment This Agreement shall not be assigned or subcontracted by IDEO, in whole or in part, without the prior written consent of Client. It shall be assignable by Client to any subsidiary or affiliated corporation or to any person, firm or corporation which may become a successor in interest to Client by purchase, merger or otherwise. Any assignment made in violation of this Section shall be void and of no force or effect.

**IN WITNESS WHEREOF, the parties have executed this Agreement:**

| "IDEO" | "Client" |
|---|---|
| IDEO Inc. | **GTECH Corporation** |
| By: [signature] | By: [signature] |
| Name: DAVID J. PRENDERGAST | Name: JOSEPH S. NADAN |
| Title: LOCATION DIRECTOR | Title: Sr. VP + CTO |
| Date: 1/9/06 | Date: 1/6/06 |

**Exhibit A**

**Statement of Work**
**Please see separate document:**

GTECH Game Guard
Retailer-Operated
Instant Ticket Vending Machine
**Dated 1/06/2006**

| The foregoing modification is hereby accepted by IDEO: | | The foregoing modification is hereby accepted by Client: | |
|---|---|---|---|
| Signature | | Signature | |
| Eric J Saperstein | | per Rob H. - Signature NOT required here 1/10/06. | |
| Printed Name | | Printed Name | |
| OD Practice Lead | 1/6/06 | | |
| Printed Title | Date | Printed Title | Date |