# EXHIBIT E

Sammartino & Berg LLP

Attorneys and Counselors at Law

Andrew Berg, Esquire
berg@sbllp.net
Admitted in Rhode Island
and Massachusetts

October 5, 2007

David Privitera
IDEO, Inc.
485 Massachusetts Avenue
Cambridge, MA 02139

**RE: Services Agreement Between GTECH Corporation and IDEO, Inc. dated January 2006 (the "Agreement")**

Dear Mr. Privitera:

This firm has been retained by GTECH Corporation as it pertains to issues surrounding your company's performance of the above-referenced Agreement. Please direct any further communications in this regard to my attention.

As stated in GTECH's correspondence of July 27, 2007, and as detailed below, it is my client's position that IDEO breached its contractual obligation to notify GTECH of significant cost overruns in the project at issue. Accordingly, GTECH is demanding the return of several payments made after the breach occurred.

***Background***

*Terms and Emphasis of the Agreement* - In January of 2006, GTECH and IDEO entered into the Agreement, whereby IDEO agreed to redesign GTECH's Game Guard retail instant ticket vending machine. The parameters of the project were set out in the "Statement of Work," which was appended to the Agreement as "Exhibit A" and incorporated into the Agreement by reference. The Statement of Work included a document dated January 6, 2006, and entitled "GTECH Game Guard Retailer-Operated Instant Ticket Vending Machine." I have enclosed a copy for your convenience.

In the Statement of Work, GTECH makes clear that the cost target of the Game Guard

Shakespeare Hall [illegible] Dorrance Street, Suite [illegible] Providence, Rhode Island 02903 • (401) 274-2111 • (401) 274-[illegible] fax

was the "Project Anchor." To this end, the Statement of Work states the following:

> In all programs there are four fundamental business elements of which only ONE can be set immovable and thus anchor the program. These elements are: 1) product cost, 2) product feature set, 3) program cost and 4) schedule.
>
> **GTECH has informed IDEO that the project anchor is PRODUCT COST.**

*Statement of Work, "Proposal"* at page 2 [bold emphasis added].

Throughout the Statement of Work, GTECH clearly states and emphasizes that the cost target for the Game Guard was $3,000 or less. In point of fact, IDEO acknowledges in the Statement of Work that COGS above $3,000 per unit has "greatly diminished value to GTECH." *Statement of Work, "Proposal"* at page 5.

In view of the emphasis on the cost target, IDEO agreed to the following in the Statement of Work:

> Although the project has been configured to maximize the chances of reducing COGS, [IDEO] cannot guarantee a particular COGS outcome as this involves many factors that are outside IDEO control. **If at any point it is determined the COGS target cannot be met, IDEO will promptly notify GTECH such that a decision can be made going forward.** GTECH may, at its option, terminate the Services Agreement and work being performed under this STATEMENT OF WORK per the terms of the IDEO Services Agreement if it is determined at any time that the COGS target cannot be met.

*Statement of Work, "Proposal"* at page 5 [bold emphasis added].

Plainly, the Agreement put a premium on the COGS being at or below $3,000, and mandated an affirmative duty to IDEO to "promptly" notify GTECH if the target could not be met.

*The Breach*

During the course of IDEO's work for GTECH, there were a number of issues regarding your company's overall performance, particularly in the areas of documentation and acquisition of necessary certifications. However, at this juncture, it is only necessary to detail IDEO's failure to timely notify GTECH of significant cost overruns.

An original premise of the Agreement was that GTECH would manufacture the entire system in-house. To this end, the Statement of Work includes basic "assumptions" regarding material loads and labor costs. *Statement of Work, "Proposal"* at page 16,



Shakespeare Hall, 128 Dorrance Street, Suite 400, Providence, Rhode Island 02903 • (401) 274-0113 • (401) 274-0175 fax

Sammartino & Berg LLP

Appendix X. However, during the course of the project, IDEO incorporated design changes to the Game Guard that involved sheet metal fabrication and assembly. During late October, 2006, GTECH determined that the suggested sheet metal work for the Game Guard project would be better performed by a third-party vendor, rather than GTECH's own manufacturing facilities. IDEO was made fully aware of GTECH's decision to outsource this aspect of the manufacturing process. IDEO reasonably should have been expected to factor this action into its cost estimates.

In November 2006, in accordance with the Agreement, IDEO released a "complete" design, and an updated costed BOM. At this time, IDEO informed GTECH that the unit cost of the Game Guard would be $3,270, or approximately 8% over the $3,000 target. However, the costed BOM provided by IDEO failed to accurately cost the outsourced components. The costed BOM also completely failed to include the total assembly costs associated with the third party assembly, instead including only the labor costs required to assemble the individual sheet metal components, all of this despite the fact that IDEO knew that GTECH was going to refer this manufacturing aspect to a third-party vendor.

Taking the outsourcing of the sheet metal assembly into account, the actual BOM was $3,700, or more than 23% over the $3,000 target. GTECH only learned of this discrepancy between the IDEO supplied BOM and the actual BOM through its own diligence in reviewing the IDEO design work. This review was delayed by the poor documentation provided by IDEO.

Although your company did inform GTECH of an 8% cost overrun, IDEO either knew, or should have known, that the actual target deviation was nearly three times this figure. IDEO's failure to promptly and accurately notify GTECH of the significant increase in the COGS deprived GTECH of the opportunity to reassess whether it wanted to continue, or terminate the project and its relationship with IDEO. Accordingly, IDEO materially breached the Agreement.

***Demand***

IDEO knew, or should have known, in early November 2006 that the unit cost for the Game Guard would greatly exceed both the per unit price target ($3,000), and IDEO's stated per unit estimate ($3,270). Although GTECH was notified of and accepted the minimal cost overruns at $3,270, GTECH would in all likelihood have terminated the Agreement in November 2006 had IDEO promptly informed GTECH of the significant cost overruns. Had it been so informed and then terminated the Agreement, GTECH would have not made the several payments to IDEO subsequent to such date. The four payments made to IDEO after such date totaled **$746,656**. Consequently, in light of IDEO's breach of the Agreement, GTECH demands IDEO return these payments to this office on or before **October 31, 2007**. Should GTECH be required to file suit in this matter, it will seek the above-stated sum, in addition to exemplary damages if the



Shakespeare Hall, 128 Dorrance Street, Suite 400, Providence, Rhode Island 02903 • (401) 274-0113 • (401) 274-0175 fax

evidence demonstrates that IDEO knowingly failed to reveal the actual COGS of the Game Guard.

If IDEO is unable or unwilling to make the above demanded payment, please contact me as soon as possible.

Kindest regards,

Andrew Berg

Enclosure

CC: Robert Hochstein, Esquire